

# IN THE
# TENTH COURT OF APPEALS

## No. 10-08-00189-CR

## EX PARTE ANTHONY CHARLES GRAVES

**From the 21st District Court
Burleson County, Texas
Trial Court No. 11136-B**

## OPINION

Graves appeals the habeas court's denial of relief on the merits of Graves's pretrial writ of habeas corpus in Graves's prosecution for capital murder. *See* TEX. PENAL CODE ANN. § 19.03(a) (Vernon Supp. 2007); TEX. CODE CRIM. PROC. ANN. arts. 11.01, 11.06, 11.08 (Vernon 2005). We affirm.

In two issues, Graves contends that the habeas court erred in denying Graves relief. Graves's first issue is premised on double-jeopardy, and his second on speedy-trial grounds.

"An appellate court reviewing a trial court's ruling on a habeas claim must review the record evidence in the light most favorable to the trial court's ruling and must uphold that ruling absent an abuse of discretion." *Kniatt v. State,* 206 S.W.3d 657, 664 (Tex. Crim. App.), *cert. denied,* 127 S. Ct. 667 (2006); *accord Ex parte Dowdle,* 165 Tex.

Crim. 536, 539, 309 S.W.2d 458, 460 (1958). "It is the applicant's obligation to provide a sufficient record that supports his factual allegations with proof by a preponderance of the evidence." *Ex parte Chandler,* 182 S.W.3d 350, 353 (Tex. Crim. App. 2005) (citing *Ex parte Thomas,* 906 S.W.2d 22, 24 (Tex. Crim. App. 1995)); *accord Ex parte Peterson*, 117 S.W.3d 804, 818 (Tex. Crim. App. 2003) (double jeopardy); *Ex parte Adams*, 768 S.W.2d 281, 287-88 (Tex. Crim. App. 1989); *see Kniatt* at 664; *Ex parte Morgan*, 412 S.W.2d 657, 659 (Tex. Crim. App. 1967).

On Graves's statement of the facts, his conviction was "tainted by recantations of the State's so-called 'star witness,' which were never disclosed to Mr. Graves or his attorneys, perjured testimony elicited by the prosecutor and many other egregious acts of misconduct by the State."[1] (Br. at 3 (citing generally *Graves v. Dretke*, 442 F.3d 334 (5th Cir. 2006) (orig. proceeding)).) The Fifth Circuit Court of Appeals ordered the federal district court "to grant" Graves's "writ of habeas corpus unless the state proceeds to retry" Graves "within a reasonable time." *Dretke*, 442 F.3d at 345.

1. *Double Jeopardy.* In Graves's first issue, he contends that his "protection from double jeopardy [is] infringed by a retrial for the same offense when the first conviction was reversed on the basis of *Brady* [*v. Maryland*] for intentional prosecutorial misconduct." (Br. at 3 (citing *Brady v. Maryland*, 373 U.S. 83 (1963)).)

*Brady v. Maryland* holds that "the suppression by the prosecution of evidence

---

[1] No record evidence before the habeas court supports Graves's arguments. Graves attached to his petition deposition testimony recanting the trial testimony of one State's witness, deceased; and an affidavit concerning a witness, also deceased, who Graves argues could impeach another State's witness. We have, nonetheless, attempted to address Graves's ground fully on its merits.

favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady,* 373 U.S. at 87; *accord Banks v. Dretke,* 540 U.S. 668, 682 & n.5 (2004); *Illinois v. Fisher,* 540 U.S. 544, 547 (2004); *see* U.S. CONST. amend. XIV, § 1; *Hayes v. State,* 85 S.W.3d 809, 814-15 (Tex. Crim. App. 2002); *Thomas v. State,* 841 S.W.2d 399, 402 (Tex. Crim. App. 1992); *Means v. State,* 429 S.W.2d 490, 494 (Tex. Crim. App. 1968).

The Double Jeopardy Clause of the United States Constitution provides: "No person . . . shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . ." U.S. CONST. amend. V.[2]

"[A] pretrial writ of habeas corpus is usually the procedural vehicle by which a defendant should raise a 'successive prosecution for the same offense' double jeopardy claim" which, if successful, would bar retrial. *Gonzalez v. State,* 8 S.W.3d 640, 643 n.9 (Tex. Crim. App. 2000) (citing *Ex parte Robinson,* 641 S.W.2d 552, 553-56 (Tex. Crim. App. 1982)); *see Ex parte Yates,* 193 S.W.3d 149, 150 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

"The Double Jeopardy Clause embodies three protections: 'It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple

---

[2] The Texas Constitution provides, "No person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction." TEX. CONST. art. I, § 14. "[T]he proper" double-jeopardy "rule under the Texas Constitution is the rule articulated by the United States Supreme Court in *Oregon v. Kennedy.*" *Ex parte Lewis,* 219 S.W.3d 335, 337 (Tex. Crim. App. 2007); *see Oregon v. Kennedy,* 456 U.S. 667 (1982); *Stephens v. State,* 806 S.W.2d 812, 814 (Tex. Crim. App. 1990); *Stine v. State,* 935 S.W.2d 443, 445 (Tex. App.—Waco 1996, pet. ref'd); *Ex parte Bennett,* 245 S.W.3d 616, 618 (Tex. App.—Fort Worth 2008, pet. ref'd, untimely filed). Graves does not argue to the contrary.

punishments for the same offense.'" *Grady v. Corbin,* 495 U.S. 508, 516 (1990), *overruled on other grounds, United States v. Dixon,* 509 U.S. 688, 704 (1993) (*Corbin* quoting *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969)); *accord Dep't of Revenue v. Kurth Ranch,* 511 U.S. 767, 769 n.1 (1994); *Ludwig v. Massachusetts,* 427 U.S. 618, 631 (1976); *Bigon v. State,* 252 S.W.3d 360, 369 (Tex. Crim. App. 2008); *Cervantes v. State,* 815 S.W.2d 569, 572 (Tex. Crim. App. 1991). "The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *United States v. DiFrancesco,* 449 U.S. 117, 127 (1980) (quoting *Green v. United States,* 355 U.S. 184, 187 (1957)); *see Stephens,* 806 S.W.2d at 816.

> [T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*DiFrancesco* at 127-28 (quoting *Green* at 187-88) (alteration added). "[T]he constitutional protection also embraces the defendant's 'valued right to have his trial completed by a particular tribunal.'" *Id.* at 128 (quoting *Arizona v. Washington,* 434 U.S. 497, 503 (1978)); *accord Wade v. Hunter,* 336 U.S. 684, 689 (1949); *see Kennedy,* 456 U.S. at 682 n.6; *Peterson,* 117 S.W.3d at 810.

Graves argues primarily under the Texas Court of Criminal Appeals's opinion in *Ex parte Masonheimer.* *See Ex parte Masonheimer,* 220 S.W.3d 494 (Tex. Crim. App. 2007). *Masonheimer* is distinguishable.

In *Oregon v. Kennedy,* the Supreme Court held: "Only where the governmental

conduct in question is intended to 'goad' the defendant into moving for mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Kennedy*, 456 U.S. at 676. The *Kennedy* Court distinguishes prosecutorial misconduct on the standard of intent to provoke a defense motion for mistrial from "a more generalized standard of 'bad faith conduct' or 'harassment' on the part of the judge or prosecutor." *Id.* at 674. Under *Kennedy*, the former bars retrial, the latter does not.

*Masonheimer* blurs *Kennedy's* distinction between cases where prosecutorial "conduct giving rise to the successful motion for mistrial was intended to provoke [or goad] the defendant into moving for mistrial" from that done "with the specific intent to avoid the possibility of an acquittal." *Masonheimer*, 220 S.W.3d at 506, 507 (quoting *Kennedy*, 456 U.S. at 679) (alteration in *Masonheimer*). The Court of Criminal Appeals held, "Under *Oregon v. Kentucky*, this deliberate conduct," *i.e.*, the "'intentional' failure to disclose exculpatory evidence," "accompanied by this specific *mens rea*," *i.e.*, "the specific intent to avoid the possibility of an acquittal," "bars a retrial." *Masonheimer* at 507-508. But *Masonheimer* maintains a clear distinction between retrial after the granting of a motion for mistrial and retrial after successful postconviction remedy. *Masonheimer's* holding, as the *Masonheimer* Court notes, should be limited to "the unique circumstances of th[e] case." *Id.* at 509. Among those circumstances was that the State had withheld exculpatory evidence in Masonheimer's first trial, and had done so again in his second. Moreover, the Court of Criminal Appeals noted that it was "required to view the evidence in the light most favorable to the" habeas "court's ruling

that prosecuting" Masonheimer "a third time" was "jeopardy-barred." *Id.* at 507. Here, the habeas court found that Graves was not entitled to relief, and we are constrained to view the evidence in the light most favorable to that holding; doing so, we do not believe that Graves has shown himself entitled to relief.

*Masonheimer*, too, although it holds that there is no distinction for double-jeopardy purposes between cases resulting in mistrial where the prosecutor had the specific intent to provoke the defendant to move for mistrial and cases where the prosecutor merely generally intends to avoid acquittal, does not have any bearing on cases other than those resulting in mistrial. *Masonheimer* emphasizes that *Kennedy* and its progeny bear only on defense-requested mistrials, and not on postconviction reversals:

- There "is some force to the argument that *Oregon v. Kennedy* protects a defendant from a retrial after a defense-requested mistrial where prosecutorial misconduct [resulting in the mistrial, **not in reversal on appeal**] is undertaken with the intention of denying the defendant an opportunity to win an acquittal." (citing *United States v. Wallach,* 979 F.2d 912, 915-16 (2d Cir. 1992))
- "*Oregon v. Kennedy* may prohibit a retrial after a defense-requested mistrial [**not a reversal on appeal**] resulting from State's deliberate conduct prompted by a desire to 'sabotage' a probable acquittal." (quoting *Hagez v. State,* 749 A.2d 206, 228 (Md. Ct. Spec. App. 2000))

*Masonheimer*, 220 S.W.3d at 805 (bracketed material in *Masonheimer*) (emphasis in *Masonheimer*); *see Kennedy,* 456 U.S. 667.

Graves urges, too, that we follow the courts of three federal circuits,[3] and ten other

---

[3] *See Wallach,* 979 F.2d at 916-17 (2d Cir.); *Robinson v. Wade,* 686 F.2d 298, 306-308 (5th Cir. 1982) (orig. proceeding); *Walls v. Hemingway,* 27 Fed. App'x 553, 556 (6th Cir. 2001) (not recommended for full-text publication) (orig. proceeding) (per curiam).

states, which, he argues, interpreting their own state constitutions,[4] have held "barr[ed] a re-trial after a case has been reversed on appeal because of intentional prosecutorial misconduct." (Br. at 15.) The United States Supreme Court and Texas Court of Criminal Appeals, however, have held to the contrary. We follow the latter, binding, precedent, unless and until it is overruled.

"It has long been settled . . . that the Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction." *Lockhart v. Nelson,* 488 U.S. 33, 38 (1988) (citing *United States v. Ball,* 163 U.S. 662 (1896); *United States v. Tateo,* 377 U.S. 463 (1964)); *accord Burks v. United States,* 437 U.S. 1, 9 (1978); *Kennedy,* 456 U.S. at 676 n.6; *Bryan v. United States,* 338 U.S. 552, 560 (1950), *overruled in part on other grounds, Burks,* 437 U.S. 1; *Francis v. Resweber,* 329 U.S. 459, 462 (1947); *Ex parte Davis,* 957 S.W.2d 9, 12 (Tex. Crim. App. 1997); *Johnson v. State,* 108 Tex. Crim. 499, 503, 1 S.W.2d 896, 897 (1927). "[I]f the first trial has ended in a conviction, the double jeopardy guarantee 'imposes no limitations whatever upon the power to *retry* a defendant who has succeeded in getting his first conviction set aside.'"[5]

---

[4] *See Pool v. Superior Court,* 677 P.2d 261, 271-72 (Ariz. 1984) (orig. proceeding); *State v. Colton,* 663 A.2d 339, 347 (Conn. 1995); *State v. Rogan,* 984 P.2d 1231, 1248-49 (Haw. 1999); *Commonwealth v. Lam Hue To,* 461 N.E.2d 776, 783-84 (Mass. 1984); *Collier v. State,* 747 P.2d 225, 226 (Nev. 1987); *State v. Marti,* 784 A.2d 1193, 1196-97 (N.H. 2001); *State v. Briet,* 1996-NMSC-67, ¶¶ 32-34, 122 N.M. 655, 666, 930 P.2d 792, 803; *State v. Kennedy,* 666 P.2d 1316, 1329 (Or. 1983); *Commonwealth v. Smith,* 615 A.2d 321, 325 (Pa. 1992); *State v. Lettice,* 585 N.W.2d 171, 181 (Wis. App. 1998).

[5] The only "exception to this rule" is that "the Double Jeopardy Clause prohibits retrial after a conviction has been reversed because of the" legal "insufficiency of the evidence." *DiFrancesco,* 449 U.S.

*DiFrancesco,* 449 U.S. at 131 (quoting *Pearce,* 395 U.S. at 720) (emphasis in *Pearce*).

"The Double Jeopardy Clause . . . does not offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding." *Kennedy,* 456 U.S. at 672 (citing *United States v. Jorn,* 400 U.S. 470, 483-84 (1971) (plurality op.); *Wade v. Hunter,* 336 U.S. 684, 689 (1949)); *see Peterson,* 117 S.W.3d at 810-11. "[T]o require a criminal defendant to stand trial again after he has successfully invoked a statutory right of appeal to upset his first conviction is not an act of governmental oppression which the Double Jeopardy Clause was intended to protect." *DiFrancesco,* 449 U.S. at 131 (quoting *United States v. Scott,* 437 U.S. 82, 91 (1978)); *see Ex parte Granger,* 850 S.W.2d 513, 517 (Tex. Crim. App. 1993). "It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction." *DiFrancesco* at 131 (quoting *Tateo,* 377 U.S. at 466); *see Ex parte Mitchell,* 977 S.W.2d 575, 579 (Tex. Crim. App. 1997).

> Permitting retrial after a conviction has been set aside also serves the interests of defendants, for "it is at least doubtful that appellate courts would be as zealous as they are now in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution."

*Lockhart,* 488 U.S. at 39 (quoting *Tateo,* 377 U.S. at 466).

Viewing the evidence in the light most favorable to the habeas court's order denying Graves relief, we hold that the habeas court did not abuse its discretion in

---

at 131 (citing *Burks,* 437 U.S. 1; *Green v. Massey,* 437 U.S. 19, 24 (1978) (orig. proceeding)); *see Tibbs v. Florida,* 457 U.S. 31, 41-42 (1982); *Watson v. State,* 204 S.W.3d 404, 417 (Tex. Crim. App. 2006); *Ex parte Bauder,* 974 S.W.2d 729, 734-35 (Tex. Crim. App. 1998), *overruled on other grounds, Lewis,* 219 S.W.3d at 337, 371; *Lytle v. State,* 131 Tex. Crim. 27, 29, 95 S.W.2d 391, 392 (1936).

denying Graves relief on Graves's double-jeopardy ground. We overrule Graves's first issue.

2. *Speedy Trial.* In Graves's second issue, he contends that his "due process rights [are] violated when he is re-tried fourteen years after the original trial, when the delay was a result of intentional prosecutorial misconduct." (Br. at 3.)

We understand Graves's complaint as an attempt to bring a speedy-trial claim. But a speedy-trial claim is not cognizable on a pretrial writ of habeas corpus. "[A]n applicant may not use a pretrial writ to assert his or her constitutional rights to a speedy trial . . . ." *Ex parte Weise,* 55 S.W.3d 617, 620 (Tex. Crim. App. 2001) (citing *Ex parte Delbert,* 582 S.W.2d 145, 146 (Tex. Crim. App. 1979); *Ex parte Jones,* 449 S.W.2d 59, 60 (Tex. Crim. App. 1970)); *accord Ex parte Lamar,* 184 S.W.3d 322, 323-24 (Tex. App.—Fort Worth 2005, pet ref'd) (plurality op.); *Ex parte Burgett,* 850 S.W.2d 267, 268 (Tex. App.—Fort Worth 1993, no pet.). "Habeas corpus is an extraordinary remedy and is available only when there is no other adequate remedy at law." *Ex parte Cruzata,* 220 S.W.3d 518, 520 (Tex. Crim. App. 2007) (citing *Ex parte Townsend,* 137 S.W.3d 79, 81 (Tex. Crim. App. 2004)); *accord Ex parte Groves,* 571 S.W.2d 888, 890 (Tex. Crim. App. 1978); *Ex parte Windsor,* 78 S.W. 510, 510 (Tex. Crim. App. 1904). Graves's remedy is a pretrial motion to set aside the charging instrument on speedy-trial grounds. *See* TEX. CODE CRIM. PROC. ANN. art. 27.03 (Vernon 2006); *Smith v. Gohmert,* 962 S.W.2d 590, 592-93 (Tex. Crim. App. 1998) (orig. proceeding); *Thomas v. Stevenson,* 561 S.W.2d 845, 847 n.1 (Tex. Crim. App. 1978) (orig. proceeding); *Pope v. Ferguson,* 445 S.W.2d 950, 955-56 (Tex. 1969) (orig. proceeding); *Ex parte Garrison,* 47 S.W.3d 105, 107 (Tex. App.—Waco 2001, pet.

ref'd); *State v. Fisher,* 198 S.W.3d 332, 336 (Tex. App.—Texarkana 2006, pet. ref'd).

Graves's second issue is not cognizable.[6]  We overrule Graves's second issue.

CONCLUSION.  Having overruled Graves's issues, we affirm.


                                            TOM GRAY
                                            Chief Justice

Before Chief Justice Gray,
      Justice Vance, and
      Justice Reyna
      (Justice Vance dissenting)
Affirmed
Opinion delivered and filed November 5, 2008
Publish
[CRPM]

---

[6] To the extent that Graves's second issue constitutes a general assertion of a due-process violation, we have determined that the record before us does not support the complaint.  On that record, we cannot say that Graves will not receive a fair trial.